**Miscellaneous Docket No. 16-105**

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

In re: TC Heartland, LLC,

Petitioner.

_____

On Petition for a Writ of Mandamus to the U.S. District Court
for the District of Delaware in Case No. 14-028 (LPS)
_____

**RESPONDENT KRAFT FOODS GROUP BRANDS LLC'S
RESPONSE TO PETITION FOR WRIT OF MANDAMUS
FILED BY PETITIONER TC HEARTLAND, LLC**

John D. Luken
Joshua A. Lorentz
Eric K. Combs
Robert M. Zimmerman
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio  45202
(513) 977-8200
john.luken@dinsmore.com
joshua.lorentz@dinsmore.com
eric.combs@dinsmore.com
robert.zimmerman@dinsmore.com

*Attorneys for Respondent
Kraft Foods Group Brands LLC*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
IN RE: TC HEARTLAND, LLC
No. 2016-105

## CERTIFICATE OF INTEREST

Counsel for Respondent Kraft Foods Group Brands LLC certifies the following:

1. The full name of every party represented by the undersigned is Kraft Foods Group Brands LLC.

2. No other real parties in interest are represented by the undersigned.

3. Kraft Heinz Foods Co. is the parent company of Kraft Foods Group Brands LLC. No publicly traded company owns 10 percent or more of Kraft Foods Group Brands LLC's stock. Kraft Heinz Foods Co. is wholly owned by The Kraft Heinz Company, a publicly traded company.

4. The names of all law firms and the partners or associates that appeared for Kraft Foods Group Brands LLC in the trial court or are expected to appear in this court are:

**DINSMORE & SHOHL LLP**
John D. Luken
Joshua A. Lorentz
Patrick D. Lane
Eric K. Combs
Robert M. Zimmerman

**RICHARDS, LAYTON & FINGER, P.A.**
Frederick L. Cottrell, III
Selena E. Molina
Anthony G. Flynn

Date: November 9, 2015                    Respectfully submitted,

                                          */s/ John D. Luken*
                                          John D. Luken

i

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF CONTENTS.........................................................................ii

TABLE OF AUTHORITIES ................................................................. iii

I.    INTRODUCTION .........................................................................1

II.    GROUNDS FOR DENYING THE PETITION .............................6

    A.    This Case Is Ill-Suited to the Invocation of the Extraordinary Remedy of Mandamus ..........................................................6

    B.    Venue Is Proper in the District of Delaware Because Heartland "Resides" There for Purposes of §1400(b). ..........................................7

        1.    Section 1391(c)'s Definition of Corporate Residence Continues to Apply to §1400(b). . ...............................................7

        2.    There Is No Basis for This Court to Reconsider *VE Holding* En Banc..................................................14

    C.    *Beverly Hills Fan* Is Sound and Permits the Exercise of Personal Jurisdiction Over Heartland in Delaware Under the Stream-of-Commerce Theory. ..........................................................18

    D.    *Stare Decisis* Forecloses Revisiting Established Precedent. . ............24

III.    CONCLUSION ........................................................................28

# TABLE OF AUTHORITIES

**Page**

## CASES:

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
    689 F.3d 1358 (Fed. Cir. 2012) ...................................................18

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
    548 U.S. 291 (2006) ...................................................................15

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
    21 F.3d 1558 (Fed. Cir. 1994) ......................2, 5, 7, 18, 21, 22, 23, 24, 25, 27

*Caminetti v. United States*,
    242 U.S. 470 (1917) ...................................................................15

*Cheney v. United States Dist. Court*,
    542 U.S. 367 (2004) .....................................................................6

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
    467 U.S. 837 (1984) ...............................................................15, 18

*Connecticut Nat. Bank v. Germain*,
    503 U.S. 249 (1992) ...................................................................15

*E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*,
    525 F.3d 1353 (Fed. Cir. 2008) ..................................................22

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
    353 U.S. 222 (1957) ..................................3, 4, 7, 8, 9, 11, 12, 14

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
    485 U.S. 271 (1988) .....................................................................6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014) ..........................................................24, 25

*Hanson v. Denckla*,
    357 U.S. 235 (1957) ...................................................................19

*Hazelquist v. Guchie Moochie Tackle Co.*,
    437 F.3d 1178 (Fed. Cir. 2006) ...................................................22

*In re Altera Corp.*,
    494 F. App'x 52 (Fed. Cir. 2012) ...................................................6

*In re Regents of Univ. of Cal.*,
    101 F.3d 1386 (Fed. Cir. 1996) ...................................................6

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) ...................................................6

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ...................................................20

*Johnson Gas Appliance Co. v. VE Holding Corp.*,
    499 U.S. 922 (1991) ...................................................9

*J. McIntyre Machinery, Ltd. v. Nicastro*,
    131 S. Ct. 2780 (2011) ...................................................19

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ...................................................21, 23

*Kimble v. Marvel Entm't, LLC*,
    135 S. Ct. 2401 (2015) ...................................4, 5, 24, 25, 26, 27

*Michigan v. Bay Mills Indian Community*,
    134 S. Ct. 2024 (2014) ...................................................24

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S.Ct. 2238 (2011) ...................................................15, 18, 26

*Nuance Communications, Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010) ...................................................18

*Patterson* v. *McLean Credit Union*,
    491 U. S. 164 (1989) ...................................................25, 26

iv

*Payne v. Tennessee*,
    501 U. S. 808 (1991) ...................................................................24

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
    917 F.2d 1574 (Fed. Cir. 1990) .............................2, 3, 7, 8-10, 12-16, 24-27

*United States v. Ron Pair Enters.*,
    489 U.S. 235 (1989) ...................................................................14

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ...............................................................19

## STATUTES

28 U.S.C. §1391 ...................................... 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 15, 20, 26

28 U.S.C. §1400 ................................ 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 26

28 U.S.C. §1404 ............................................................................... 1

35 U.S.C. §281 .................................................................................22

35 U.S.C. §282 ............................................................................16, 26

## LEGISLATIVE MATERIALS

Federal Courts Jurisdiction and Venue Clarification Act of 2011 ....9, 10, 12, 14, 15

H. R. 1908, 110th Cong. (2007) ...............................................................17

H. R. Rep. No. 112-10 (2011)....................................................4, 9, 12, 15

S. Rpt. 110-259 (2008) .....................................................................16, 17

S. 3818, 109th Cong. (2006) .................................................................17

S. 1145, 110th Cong. (2007)...................................................................17

153 Cong. Rec. H10270, H10276 (2007) ................................................................ 16

157 Cong. Rec. S5402, S5410 (2011) ................................................................... 16

S. 515, 111th Cong. (2009) ................................................................................... 17

## **COURT RULES**

Fed. Cir. R 35(a)(1) ................................................................................................ 7

## I.    INTRODUCTION

A writ of mandamus is an extraordinary remedy reserved for extraordinary circumstances.  None are present here.  Respondent Kraft Foods Group Brands LLC ("Respondent" or "Kraft") is not a non-practicing entity that concocts transparently opportunistic connections to the Eastern District of Texas to be able to sue there under questionable patents and coerce unfair settlements.  Rather, Kraft is an established manufacturer that developed and practices the technology of the patents at issue.  In order to protect the investment in that technology and in the products embodying it, Kraft has, consistent with decades of venue and personal jurisdiction law of this Court, filed suit in Delaware, its state of incorporation, against Petitioner TC Heartland, LLC ("Petitioner" or "Heartland"), a nationwide infringer that has purposefully directed the flow of infringing products into Delaware.

While the law review articles, other scholarly works, and HBO show cited by Petitioner and the Amici criticize the hospitality that the Eastern District of Texas extends to non-practicing entities with little or no real ties to that forum and the reluctance of that court to employ 28 U.S.C. §1404 to send those cases to more logical forums, such parties and practices are not involved here.  The Delaware district court has done nothing in this case other than scrupulously apply this Court's established and sound precedent.

1

Kraft itself is, at other times, a patent infringement defendant.  Kraft concurs with much of the criticism that Heartland and the Amici direct to the adverse effects of forum shopping in the Eastern District of Texas by non-practicing entities.  However, Kraft respectfully suggests that those concerns do not justify—much less compel—this Court doing a 180-degree turn, abandoning decades of its own venue and jurisdictional law, and adopting by judicial fiat a dramatically defendant-centric patent litigation regime that would require one to sue a nationwide infringer in either its home court or in all 50 states.  This would unduly burden real innovators like Kraft, particularly those with fewer resources than the parties or the Amici before the Court in this case, for whom litigating even a meritorious infringement case in the far-away home district of a well-funded infringer may be economically difficult or impossible.  Rather, the solution to such concerns lies in the considered judgment of Congress, which may select from a broad variety of alternatives to the status quo and tailor a solution to the perceived problem.

Indeed, that in 13 pages Heartland runs up the flagpole no less than three alternative theories[1] to justify asking this Court to overturn two decades of its

---

[1] Heartland argues that *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990), was wrongly decided; that it was superseded by subsequent statutory changes; and that *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), and its progeny have been wrong for 20 years since that decision.

venue and personal jurisdiction law confirms that this case does not present the clear misapplication of precedent for which mandamus may be appropriate.

The statutory venue provisions at issue and the legislative changes that led to their current language resoundingly confirm the propriety of this Court's 1990 *VE Holding* decision and of the district court's ruling below.  The Supreme Court held in *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222 (1957), that where a corporation "resides" under 28 U.S.C. §1400(b) was not informed by the language of 28 U.S.C. §1391(c) as it existed in 1957.  After a careful analysis, this Court correctly held in *VE Holding* that Congress's 1988 revisions to §1391(c) literally and inescapably required that that provision's definition of where a corporation "resides" would now apply to *all* venue statutes contained in Chapter 87 of Title 28, which included (and still includes) §1400(b).  The Supreme Court denied certiorari in *VE Holding*, and it has remained settled law for the 25 years since.

The 2011 amendments to §1391 and their legislative history did not eviscerate *VE Holding*; rather, they confirmed and strengthened its analysis.  As Heartland and the Amici note, the revised §1391(a) provides that §1391's general venue rules (most notably the revised general venue rule of §1391(b), which replaced the former general diversity and non-diversity venue rules of former §§1391(a) and (b), respectively) still do not supplant other specific venue rules like

3

§1400(b).  However, the legislative history of the 2011 amendments is clear that the definition of corporate residence set forth in §1391(c) "appl[ies] to all venue statutes, including venue provisions that appear elsewhere in the United States Code."  H. R. Rep. No. 112-10, at 20 (2011).  The 2011 amendments therefore confirm *VE Holding*'s continued vitality.

The result urged by Heartland and the Amici would necessitate reading §1391(c)'s definition of corporate residence not only out of §1400(b), but also out of numerous other specific statutory venue rules that, like §1400(b), depend at least in part on where a corporation "resides" yet themselves contain no definition for that term.  Heartland and the Amici offer no statutory basis for distinguishing in this regard between §1400(b) and these many other specific venue rules that "appear elsewhere in the United States Code," and *Fourco*'s comments about the version of §1391(c) that existed in 1957 cannot fill this void.

Heartland and the Amici urge that the drastic change they seek is necessary to cure a plethora of ills caused by forum shopping, primarily by patent owners who neither practice nor had anything to do with the development of the inventions at issue, particularly in the Eastern District of Texas.  However, as the Supreme Court has repeatedly made clear (most recently in *Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2409 (2015)), *stare decisis* requires that—no matter how compelling the purported policy justifications—decisions to reverse such well-

4

established authority are to be made by Congress, not the courts. Indeed, as is shown by the variety of changes proposed to and considered by Congress in this area, Congress has available to it a much more robust palette of alternatives from which to select, in contrast to the stark binary choice between the alternatives presented to this Court—the status quo and the draconian overreaction to the status quo urged by Heartland.

The same is true for Heartland's alternative argument (that even the Amici do not embrace) that this Court's *Beverly Hills Fan* decision and the rest of its long-established jurisprudence regarding personal jurisdiction in patent infringement cases should be summarily replaced by the same defendant-centric result that Heartland seeks with its venue arguments. Indeed, Heartland identifies no reason that a personal jurisdiction issue cannot be corrected in an appeal. More importantly, the Supreme Court's caution concerning the proper roles of Congress and the courts expressed in *Kimble* and other decisions applies equally to the personal jurisdiction argument raised by Heartland.

In sum, the Petition finds no support in the facts, law, or policy considerations. The district court's straightforward application of this Court's long-standing precedent should not be disturbed. The district court correctly determined that venue in this case is proper in the District of Delaware because Heartland "resides" there and that jurisdiction over Heartland is appropriate

5

because Heartland purposefully placed infringing products into the stream of commerce knowing that such products would be sold in Delaware. The Petition should be denied.

## II.    GROUNDS FOR DENYING THE PETITION

### A.    This Case Is Ill-Suited to the Invocation of the Extraordinary Remedy of Mandamus.

A writ of mandamus is "an extraordinary remedy, to be reserved for extraordinary situations." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988). The petitioner carries the burden of demonstrating that "it lacks adequate alternative means to obtain the relief sought" and that its right to issuance of the writ is "clear and indisputable." *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1387 (Fed. Cir. 1996). To show a "clear and indisputable" right to the writ, the petitioner must prove that the trial court's analysis amounted to a "*clear* abuse of discretion." *In re Altera Corp.*, 494 F. App'x 52, 53 (Fed. Cir. 2012) (emphasis added); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (mandamus requires a "patently erroneous result"). Indeed, even if one demonstrates a "clear and indisputable" right to the writ, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. United States Dist. Court*, 542 U.S. 367, 382 (2004).

As discussed below, this case presents no "clear and indisputable" right to a writ. Mandamus is particularly inappropriate as a vehicle to request the

6

overturning of long and well-established venue and jurisdictional precedent of this Court.  Indeed, under Federal Circuit Rule 35(a)(1), "only the court en banc may overrule a binding precedent."  In the absence of en banc review, the Court may not overturn *VE Holding* or *Beverly Hills Fan*.  As set forth below, however, even if considered en banc, Heartland's arguments are entirely without merit.

**B.    Venue Is Proper in the District of Delaware Because Heartland "Resides" There for Purposes of §1400(b).**

**1.    Section 1391(c)'s Definition of Corporate Residence Continues to Apply to §1400(b).**

The patent venue statute, 28 U.S.C. §1400(b), provides, in part, that venue in patent cases lies "in the judicial district where the defendant resides," but it does not define the term "resides."  In 1957, the Supreme Court held that, for purposes of this statute, a corporation "reside[d]" in its place of incorporation.  *Fourco*, 353 U.S. at 226.  In doing so, the Supreme Court addressed the interaction between §1400(b) and the then-current version of the general venue statute, 28 U.S.C. §1391, which, *inter alia*, established the general venue rules for cases involving corporate defendants.  Section 1391(c) then provided that a corporation could be sued not only in the district where it was incorporated but also in any district where it was "licensed to do business" or was "doing business" and indicated that any such judicial district  would be regarded as the "residence" of the corporation.  The Supreme Court concluded that these more liberal general venue rules in §1391 did

not "supplement" §1400(b). *Fourco*, 353 U.S. at 229. Thus, a corporation could not be sued for patent infringement in a district where it was only "licensed to do business" or was "doing business," unless that district also happened to be its place of incorporation.

In 1988, Congress revised §1391(c). The new §1391(c) no longer provided substantive rules for corporate venue; instead, it became a purely definitional provision. Specifically, it defined the residence of a corporate defendant as "any district in which it is subject to personal jurisdiction at the time the action is commenced." Crucially, Congress also inserted the phrase "[f]or purposes of venue under this chapter" before the new definition.[2] Because "this chapter" (i.e., Chapter 87 of Title 28) included §1400(b), this Court held that the definition of corporate residence in the new §1391(c) "clear[ly]" and "unambiguous[ly]" applied to §1400(b). *VE Holding*, 917 F.2d at 1581. Thus, "the meaning of the term 'resides' in §1400(b) ha[d] changed" from the time when *Fourco* addressed it; as applied to a corporate defendant, the term now encompassed any district

---

[2] Thus, the amended §1391(c) read, in part:

> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. . . .

where the defendant was subject to personal jurisdiction, not just where it was incorporated. *Id.* at 1575.[3]

The thrust of the Petition here is the suggestion that the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (the "2011 Act") effected a major change to patent venue law by making §1391(c)'s definition of corporate residence inapplicable to §1400(b)—bringing back to life *Fourco*'s construction of "resides." Heartland's argument is not premised on any change to §1391(c). Indeed, the language in §1391(c) upon which *VE Holding* relied ("[f]or purposes of venue under this chapter") was replaced as part of the 2011 Act with even broader language: "[f]or all venue purposes[.]" As a result, while §1391(c)'s definition of corporate residence applied from 1988 through 2011 to all venue statutes in Chapter 87 of Title 28, that definition has been extended by the 2011 Act to all venue statutes anywhere in the U.S. Code.

As Heartland acknowledges (Pet. at 7), the legislative history of the 2011 Act makes it clear that the definition of corporate residence in "proposed subsection 1391(c) would apply to *all* venue[]statutes, including venue provisions that appear elsewhere in the United States Code." H. R. Rep. No. 112-10, at 20 (2011) (emphasis added). This 2011 broadening of the reach of §1391(c) did not affect the meaning of §1400(b), as that provision is part of Chapter 87, and

---

[3] The Supreme Court denied certiorari in *VE Holding*. *Johnson Gas Appliance Co. v. VE Holding Corp.*, 499 U.S. 922 (1991).

therefore §1391(c)'s definition of corporate residence had already applied to it since 1988, as *VE Holding* recognized. The 2011 Act simply made §1391(c)'s definition apply to even more specific venue rules than §1400(b) and others like it in Chapter 87, and it thus confirms congressional intent to apply §1391(c) as broadly as possible.

Heartland does not suggest otherwise. It readily admits that the definition of corporate residence in the current §1391(c) extends to "*most* special venue statutes . . . wherever they are found in the U.S. Code." (Pet. at 7-8 (emphasis added).) However, having so deftly substituted "most" where §1391(c) actually uses "all" when paraphrasing the statute, Heartland suggests that this statutory definition somehow does *not* apply to §1400(b).

It pins that assertion on sub-section (a) of the revised §1391. Prior to the 2011 Act, §1391(a) dealt with venue in diversity cases. That issue is now addressed in §1391(b). Meanwhile, the new §1391(a) reads, in part:

> (a) Applicability of Section.—Except as otherwise provided by law—
> (1) this section shall govern the venue of all civil actions
> brought in district courts of the United States; and
> (2) . . . .

According to Heartland, because sub-section (a) states that "this section [i.e., §1391] shall govern" unless "otherwise provided by law," the definition of corporate residence in sub-section (c) as "any judicial district in which [the corporation] is subject to the court's personal jurisdiction" does not extend to

10

special venue statutes that provide "otherwise"—that is, those that already include a different definition of corporate residence.  In fact, no such definitional language appears in the text of §1400(b).  Nevertheless, Heartland insists that §1400(b) is just such a statute.  (Pet. at 7-8.)

That the general definition of corporate residence in §1391(c) would not apply to a venue statute that contained its own definition of "resides" is undisputed.  The problem for Heartland is that §1400(b) contains no such definition; it simply does not "otherwise provide."  Section 1400(b) states that venue in patent cases lies in "the judicial district where the defendant resides" but is silent as what "resides" means.  Nothing in §1400(b) purports to define that term, much less do so in a way that is inconsistent with the definition in §1391(c).  Therefore, to determine where a corporation "resides" for purposes of venue under §1400(b), one must still look to §1391(c), the provision that defines corporate residence "[f]or all venue purposes."

Heartland nevertheless maintains that §1391(c) does not provide the definition of "resides" in §1400(b) because *Fourco* purportedly establishes that the "general default definition of corporate residence" does not apply to §1400(b).  (Pet. at 8.)  For Heartland, *Fourco* is the "law" that provides "otherwise," as those words are used in §1391(a), and therefore somehow makes §1391(c)'s straightforward definition of corporate residence "[f]or all venue purposes"

11

inapplicable to §1400(b). This simply ignores the fact that *Fourco* was *not* the "law" when the 2011 Act went into effect. By 2011, *Fourco* had not been the "law" for 23 years. As *VE Holding* recognized, the 1988 change to §1391(c) made *Fourco* a dead letter, because the addition of "exact and classic language of incorporation" (i.e., "[f]or purposes of venue under this chapter") "reveal[ed] a clear intention that §1391(c) is to supplement §1400(b)"—an "intention" that was missing from §1391(c) as it existed at the time of *Fourco*. 917 F.2d at 1579-80. Indeed, the legislative history of the 2011 Act, which made it clear that the definition of corporate residence in the revised §1391(c) "would apply to *all* venue[]statutes," only strengthened that "intention." H. R. Rep. No. 112-10, at 20 (2011) (emphasis added).

Thus, when the 2011 Act went into effect, no "law" insulated §1400(b) from the reach of §1391(c). Rather, to the extent that §1391(c) made the general definition of corporate residence applicable "[f]or all venue purposes," the relevant "law" had already expressly extended that definition to §1400(b). Heartland's assertion that §1391(a)'s "[e]xcept as otherwise provided by law" language renders §1391(c) inapplicable to §1400(b) simply disregards both the actual state of venue law since 1988 and the statute's clear language.

Heartland essentially asserts that *Fourco* permanently embedded a restrictive meaning of "resides" into §1400(b) that Congress could remove *only* by changing

12

§1400(b) itself.  But this Court long ago rejected the premise that "the only way to change the way that venue in patent infringement actions is determined is to change §1400(b)."  *VE Holding*, 917 F.2d at 1579.  Clearly, the definition of corporate residence in §1391(c) would extend to §1400(b) if the introductory clause in §1391(c) read: "For all venue purposes, *including for purposes of §1400(b)*."  The absence of such obvious surplusage does not mean that §1391(c) is inapplicable to §1400(b).  To the contrary, the absence of a clear indication in §1391(c) that §1400(b) would be *exempted* from its reach is conclusive evidence of congressional intent to define "resides" in §1400(b) through §1391(c).  As this Court pointed out in *VE Holding* (referring to the 1988 version of §1391(c)), "[c]ertainly it would not be sensible to require Congress to say, 'For purposes of this chapter, *and we mean everything in this chapter . . .*,' in order to ensure that it has covered everything in a chapter of the statutes."  917 F.2d at 1579.

Heartland thus fails to offer any principled basis for its proposed "patent venue is different" rule.  In reality, §1400(b) is no different from any other venue statute that employs the term "resides" (or a variation thereof) but lacks its own definition for the term.[4]  Heartland's argument that §1391(c)'s definition of corporate residence does not apply to §1400(b) is meritless.

---

[4] Numerous examples of such statutes are listed in Appendix A.

### 2. There Is No Basis for This Court to Reconsider *VE Holding* En Banc.

Alternatively, Heartland suggests that, even if the 2011 Act did not supersede *VE Holding*, "the validity of *VE Holding* should be re-examined by this Court en banc" because it "directly conflicts" with the Supreme Court's reasoning in *Fourco*. (Pet. at 9.) However, Heartland's attempt to create a conflict between *Fourco* and *VE Holding* ignores the fact that those decisions addressed *two different statutes*. At the time of *Fourco*, §1391(c) did not expressly state that §§1391(c) and 1400(b) must be read together. Based on "the non[-]specific language of §1391(c) and prior history as the [Supreme] Court read it," *Fourco* concluded that §1391(c) did not "supplement" §1400(b). *VE Holding*, 917 F.2d at 1579. However, after the 1988 revisions, "[s]ection 1391(c) as it was in *Fourco* [was] no longer." *Id.* Rather, §1391(c) now included "exact and classic language of incorporation: 'For purposes of venue under this chapter. . . .'" *Id.* This language was "clear" and its meaning "unambiguous." *Id.* at 1580. There could be "no mistake" that the revised §1391(c) applied to "all of chapter 87 of title 28, and thus to §1400(b)." *Id.*

Heartland identifies no errors in *VE Holding*'s analysis of the text of §1391(c). In fact, *VE Holding* faithfully applied the principle that "where . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989)

14

(quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).   The Supreme

Court has "stated time and again that courts must presume that a legislature says in

a statute what it means and means in a statute what it says there." *Arlington Cent.*

*Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (quoting *Connecticut*

*Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992)).   The text of the current

§1391(c), which states that the provision applies "[f]or all venue purposes," is

equally clear.   The legislative history of the 2011 Act confirms what is already

apparent from the text of the provision: §1391(c) defines "resides" in §1400(b).

H. R. Rep. No. 112-10, at 20 (2011) (stating that "proposed subsection 1391(c)

would apply to all venue[]statutes").

Heartland and its Amici argue that *VE Holding* has had adverse policy

consequences, including the disproportionate percentage of patent cases filed in the

Eastern District of Texas, the plaintiff-friendly rules employed by that court, and

plaintiffs' ability to extract unwarranted settlements there from defendants that

cannot afford to or choose not to defend patent cases filed there.   (*See, e.g.*, Pet. at

9-10; Br. of *Amici* EFF *et al.* at 2-10; Br. of *Amici* Acushnet Company *et al.* at 1,

8-12.) Of course, "[s]uch policy arguments are more properly addressed to

legislators or administrators, not to judges." *Chevron, U.S.A., Inc. v. NRDC, Inc.*,

467 U.S. 837, 864 (1984); *see also Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct.

2238, 2252 (2011) ("We find ourselves in no position to judge the comparative

15

force of these policy arguments . . . . Congress has left the Federal Circuit's interpretation of §282 in place despite ongoing criticism . . . . Any recalibration of the standard of proof remains in its hands.")

Congress is in fact well-aware of these issues. Legislators have expressed many of the same concerns in considering proposed patent reform bills. In 2007, Rep. Lofgren argued for changes in patent venue law because, at that time, "filings in eastern Texas went from 32 cases a year 4 years ago to over 234 cases last year"; "[p]atent holders win 27 percent more often there, and the awards are much bigger"; and the "presiding judge himself describes the district as a 'plaintiff-oriented district.'" 153 Cong. Rec. H10270, H10276 (2007) (statement of Rep. Lofgren). Sen. Schumer echoed these remarks in a 2011 debate. 157 Cong. Rec. S5402, S5410 (2011) (statement of Sen. Schumer); *see also*, *e.g.*, S. Rpt. 110-259, at 53 (2008) (additional Views of Sen. Specter) (deriding "forum shopping" in patent cases). Some legislators specifically argued that *VE Holding* was the cause of these asserted problems and urged a statutory amendment to overturn that decision. *See* 153 Cong. Rec. H10270, H10276 (statement of Rep. Lofgren) (asserting that *VE Holding* "has led to forum shopping").

And Congress did in fact consider—but reject—many proposals. For example, Congress considered bills that would have replaced §1400(b) with a new provision containing a special definition of "resides" applicable only in patent

cases.  *See, e.g.*, S. 3818, 109th Cong., §8 (Aug. 3, 2006) (proposing a new §1400(c) that would have provided, for purposes of venue under subsection (b), that a corporation is "deemed to reside in the judicial district in which the corporation has its principal place of business or in the State in which the corporation is incorporated").  H. R. 1908, 110th Cong., §10 (Apr. 18, 2007); S. 1145, 110th Cong., §10 (Apr. 18, 2007).[5]

That these bills did not pass Congress was partly due to concern by some legislators that such provisions—while more modest than what Heartland asks this Court to impose—went too far in the opposite direction.  For example, Senators Feingold and Coburn described one proposed venue provision as "skewed heavily in favor of infringer-defendants" and argued that it would "deter the filing of legitimate infringement suits."  S. Rpt. 110-259, at 53 (2008) (additional views of Sen. Feingold and Coburn).  These debates and proposals highlight both that many proponents of change in this area do not support the defendant-centric venue rule

---

[5] While one of these bills (H.R. 1908) passed the full House, its original venue proposal was changed significantly.  First, the amended provision deleted the proposed new definition of "residence" for patent venue purposes.  Second, the proposed two-part patent venue test was replaced with a multi-part test addressing, *inter alia*, where the "plaintiff resides," if it is an institute of higher education (or its patent licensing organization), a 501(c)(3) nonprofit, or a 501(a) tax exempt organization; or where the "plaintiff resides if the plaintiff is named as inventor or co-inventor on the patent and has not assigned, granted, conveyed, or licensed" the patent.  H.R. 1908, 110th Cong., §11 (Sept. 7, 2007).  A bill with a virtually identical patent venue provision was introduced early in the next Congress as well.  *See* S. 515, 111th Cong., §8 (Mar. 3, 2009).  The result urged here by Heartland could accommodate no such subtle plaintiff-centric considerations.

that Heartland asks this Court to impose in all patent cases and that Congress is uniquely positioned to draw sensible lines to combat perceived forum-shopping abuses without creating unintended litigation advantages for patent infringers. This Court, by contrast, does not have such flexibility to tailor a solution to the perceived problems. Allowing Congress to weigh the competing policy concerns and legislative proposals is not merely what the Constitution requires, but it is also the prudent thing to do. *See Microsoft*, 131 S. Ct. at 2252; *Chevron*, 467 U.S. at 864.

**C.** ***Beverly Hills Fan* Is Sound and Permits the Exercise of Personal Jurisdiction Over Heartland in Delaware Under the Stream-of-Commerce Theory.**

Since *Beverly Hills Fan Co.* was decided more than twenty years ago, the law has been clear and settled that, where a "defendant purposefully shipped the accused [product] into [the forum state] through an established distribution channel," the district court has specific personal jurisdiction over the alleged infringer. 21 F.3d at 1571; *see also AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir. 2012) ("adher[ing] to the *Beverly Hills Fan* line of cases"); *Nuance Communications, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1234-35 (Fed. Cir. 2010) (applying *Beverly Hills Fan*'s stream-of-commerce theory to uphold jurisdiction). Here, there is no dispute that Heartland directly shipped the accused product into Delaware through an established distribution

channel.  (Pet. at 12.)  The district court's exercise of jurisdiction over Heartland was therefore fully consistent with controlling Circuit precedent.

Heartland attempts to sidestep this straightforward analysis in two ways. First, Heartland suggests that, even though it ships a portion of the accused products directly into Delaware, it has not "purposefully avail[ed] itself of the privilege of conducting activities within the forum State."  (Pet. at 12 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1957)).)  Heartland relies on *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), for this proposition.  *J. McIntyre*, a product liability case, is easily distinguishable, however.  There, an English manufacturer made no effort to target the forum state, but four of its products found their way to the forum state as a result of the efforts of a third-party distributor.  *Id.* at 2786.  Because the defendant did not purposefully direct any actions toward the forum state, the Supreme Court held that specific jurisdiction was lacking.  Here, in contrast, Heartland has intentionally and purposefully targeted Delaware by directing hundreds of thousands of dollars' worth of shipments to Delaware and maintaining an established distribution channel that regularly serves that state.  (D.I. 59 at 8.)

Second, Heartland suggests that, notwithstanding its shipment of accused products into Delaware, this case does not arise from "an 'activity or an occurrence that takes place in the forum state.'"  (Pet. at 10 (quoting *Walden v. Fiore*, 134 S.

19

Ct. 1115, 1121 n.6 (2014)).)  According to Heartland, "each act of infringement gives rise to a separate cause of action"; because Kraft "seeks damages for acts of alleged patent infringement . . . committed in . . . non-Delaware locations," this case is "not one that arises from an activity or an occurrence that takes place in the forum state."  (Pet. at 10 (internal quotation marks and citations omitted).)  As the magistrate judge noted, Heartland's jurisdictional theory, "if adopted, would result in sweeping changes to the way patent litigation proceeds in the United States." (D.I. 59 at 10.)[6]

Jurisdiction here plainly arises from "an activity or an occurrence that takes place in the forum state"—that is, Heartland's intentional shipment of accused products into Delaware.  That Kraft also seeks damages for infringement in states other than Delaware in no way defeats jurisdiction.  Personal jurisdiction over a non-resident defendant exists provided the defendant has "minimum contacts" with the forum state and "the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  In the patent context, as long as the accused infringer has the requisite

---

[6] Heartland cites in passing new language in §1391(c) that authorizes venue where the district court has jurisdiction over a defendant "with respect to the civil action in question."  (Pet. at 10.)  Heartland argues that this language does not permit venue to lie in Delaware because the district court has personal jurisdiction with respect to only a "part" of the civil action here.  This argument is linked to the jurisdictional analysis below.  For the same reasons, the argument is without merit, whether raised in the jurisdictional or venue context.

"minimum contacts" with the forum state (for example, through its purposeful shipment of accused products there), addressing the plaintiff's claims for infringement in jurisdictions other than the forum state fully comports with "the traditional notions of fair play and substantial justice," in part because the forum state "has a substantial interest in cooperating with other states to provide a forum for efficiently litigating plaintiff's cause of action." *Beverly Hills Fan*, 21 F.2d at 1568-69. "These other states will thus be spared the burden of providing a forum for [the plaintiff] to seek redress for these sales. And defendants will be protected from harassment resulting from multiple suits." *Id.*

Heartland does not expressly argue that this holding of *Beverly Hills Fan* has been overruled. Instead, it merely takes issue with *Beverly Hills Fan*'s reliance on *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). *Beverly Hills Fan* cited *Keeton* for, among other things, the proposition that the *Beverly Hills Fan* plaintiff "[was] not precluded from bringing suit in [the forum state] just because the bulk of the harm inflicted on it may [have] occur[ed] through sales in . . . other states." 21 F.2d at 1568 n.21 (citing *Keeton*, 465 U.S. at 779-80). According to Heartland, this might have been true in *Keeton*, where the forum state's "single publication rule" permitted a libel plaintiff to seek damages on a nationwide basis, but not in *Beverly Hills Fan* or patent cases generally, where no similar statute exists. (*See* Pet. at 11.) Thus, Heartland does not appear to take issue with *Beverly Hills Fan*'s

21

*constitutional* due process analysis; rather, it challenges only *Beverly Hills Fan*'s assumption that a patent infringement plaintiff is authorized by *statute* to seek damages for nationwide infringement (even though "the bulk of the harm inflicted on it may [have] occur[ed] through sales in . . . other states").

Heartland's suggestion is meritless. The Patent Act plainly authorizes a plaintiff to seek redress for infringement regardless of where in the United States such infringement may have occurred. Specifically, 35 U.S.C. §281 provides that "[a] patentee shall have remedy by civil action for infringement of his patent." The statute clearly encompasses "infringement" in whatever state it occurs—nothing in §281 purports to impose any state-based geographical limit on the "infringement" for which a "patentee" can seek a "remedy by civil action."[7] Thus, the question in the patent context is whether compelling an accused infringer to defend a lawsuit in the forum state seeking damages for nationwide infringement, even though only a small portion of infringement occurred in the forum state, would be "fair" in the

---

[7] The cases cited by Heartland for the proposition that "each act of patent infringement gives rise to a separate cause of action" (Pet. at 10) do not suggest otherwise. First, they addressed when (not where) patent infringement claims accrue. *See Hazelquist v. Guchie Moochie Tackle Co.*, 437 F.3d 1178, 1180-81 (Fed. Cir. 2006) (addressing whether patent infringement claims accrued after bankruptcy discharge); *E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*, 525 F.3d 1353, 1362 (Fed. Cir. 2008) (addressing whether patent infringement claims accrued after a certificate of correction had issued). Second, and more importantly, whether or not "each act of patent infringement gives rise to a separate cause of action" is beside the point, because §281 authorizes a plaintiff to aggregate those causes of action in one "civil action."

constitutional sense.  This is essentially the same question addressed by *Keeton* (albeit in the libel context).  465 U.S. at 775 (framing the issue as whether it was "'fair' to compel  [the defendant] to defend a multistate lawsuit in New Hampshire seeking nationwide damages for all copies of the five issues in question, even though only a small portion of those copies were distributed in New Hampshire").  *Keeton* was squarely on point in *Beverly Hills Fan*.

Indeed, Heartland's theory would lead to unworkable results.  Under Heartland's theory, a patentee must pursue an alleged infringer in every individual state in which infringing sales are made, resulting in up to fifty separate lawsuits.  In the alternative, the patentee could sue the infringer in its home district once.  Such a rule would allow infringers to profit from infringing as broadly as possible by insuring their choice of forum.  That is, by infringing more broadly, a multi-state infringer like Heartland could ensure that it could only be sued in its home forum.  Such a result would effectively eviscerate specific jurisdiction over nationwide patent infringers, which would impose a particular burden on smaller patent owners that would be required to sue in distant home states of nationwide infringers with deeper pockets.

The district court correctly concluded that it has personal jurisdiction over Heartland in this case.

### D.  *Stare Decisis* **Forecloses Revisiting Established Precedent.**

Even if Heartland did raise colorable challenges to either *VE Holding* or *Beverly Hills Fan*, the doctrine of *stare decisis* demands that the Court exercise great caution before considering such challenges.  As the Supreme Court recently emphasized, "[o]verruling precedent is never a small matter."  *Kimble*, 135 S. Ct. at 2409.  *Stare decisis* "is 'a foundation stone of the rule of law,'" *id.* (quoting *Michigan v. Bay Mills Indian Community,* 134 S. Ct. 2024 (2014)), that "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process."  *Kimble*, 135 S. Ct. at 2409 (citing *Payne v. Tennessee*, 501 U. S. 808, 827-28 (1991)).  Indeed, courts will not reverse settled precedent based only on "an argument that we got something wrong."  *Kimble*, 135 S. Ct. at 2409.  Doing so requires a "special justification" beyond simply the belief that "the precedent was wrongly decided."  *Id.* (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014)).  Indeed, considerations favoring *stare decisis* are "at their acme" in patent cases because parties are "especially likely to rely on such precedents when ordering their affairs."  *Kimble*, 135 S. Ct. at 2410.

This doctrine carries even more weight with respect to a decision that, like *VE Holding*, interprets a statute.  As the Supreme Court has observed, in such circumstances, "critics of our ruling can take their objections across the street, and

Congress can correct any mistake it sees." *Kimble*, 135 S. Ct. at 2410 (citing *Patterson* v. *McLean Credit Union*, 491 U. S. 164, 172-73 (1989)). Here, *VE Holding* and *Beverly Hills Fan* have been the law of this Court for more than 20 years. Countless patent cases have followed (or are following) the road maps drawn by them. Heartland's suggestion that this Court might rule differently today than it did in 1990 or 1994 is insufficient to justify revisiting either of those decisions. "Claims that a statutory precedent has 'serious and harmful consequences' for innovation are (to repeat this opinion's refrain) 'more appropriately addressed to Congress.'" *Kimble*, 135 S. Ct. at 2412 (quoting *Halliburton,* 134 S. Ct. at 2398).

Not only is Congress better positioned to correct perceived mistakes occasioned by prior legislation, it has a wider range of corrective measures available to it. Unlike this Court, which must choose between the two binary options offered by this case, Congress "has the prerogative to determine the exact right response—choosing the policy fix, among many conceivable ones, that will optimally serve the public interest." *Kimble*, 135 S. Ct. at 2414. As discussed above, Congress has already considered a range of nuanced approaches to modifying patent venue and jurisdiction, many of which stake out a middle ground between the status quo and the defendant-centric rule that Heartland urges.

Given Congress's consideration of proposals in this legislative space, congressional inaction can be as revealing as the laws that are passed. *See Kimble*, 135 S.Ct. at 2414. Thus, in *Microsoft*, the Supreme Court declined to judicially adjust the standard of proof under 35 U.S.C. §282, noting that:

> For nearly 30 years, the Federal Circuit has interpreted §282 as we do today. During this period, Congress has often amended §282 . . . . Through it all, the evidentiary standard adopted in §282 has gone untouched. Indeed, Congress has left the Federal Circuit's interpretation of §282 in place despite ongoing criticism, both from within the Federal Government and without.

131 S. Ct. at 2252. Since Congress had "allowed the Federal Circuit's correct interpretation of §282 to stand," any "recalibration of the standard of proof remain[ed] in its hands." Particularly as to the interplay between §§1391(c) and 1400(b), Congress has allowed this Court's interpretation to stand for 25 years, and any "recalibration" of *VE Holding* should rightly be left to Congress.

Finally, none of the traditional justifications for ignoring *stare decisis* are present here. In order to reverse prior precedent, courts most often rely on "subsequent legal developments—'either the growth of judicial doctrine or further action taken by Congress'—that have removed the basis for a decision." *Kimble*, 135 S. Ct. at 2410 (quoting *Patterson*, 491 U. S. at 173 (calling this "the primary reason" for overruling statutory precedent)). But the statutory and doctrinal underpinnings of *VE Holding* and *Beverly Hills Fan* have not eroded over time. As

discussed above, no controlling precedent or congressional action since *VE Holding* or *Beverly Hills Fan* would remove the basis for either decision. Rather, the underpinning for each decision has grown stronger. In *Kimble*, the Court noted that Congress had declined to enact multiple bills that would have modified the standard at issue and concluded that this "choice suggests congressional acquiescence" to precedent, and "so further supports adhering to *stare decisis*." *Kimble*, 135 S. Ct. at 2411 n.4. At the very least, Congress's repeated refusal to enact legislation narrowing where patent cases may be brought also counsels strongly in favor of applying *stare decisis* here. Nor have the decisions challenged here proven unworkable. *See id.* at 2411. While Heartland and the Amici contend that these decisions have led to adverse consequences, the patent litigation system has functioned for more than two decades under *VE Holding* and *Beverly Hills Fan*.

Thus, even if Heartland had raised colorable arguments suggesting that either *VE Holding* or *Beverly Hills Fan* were wrongly decided years ago, every consideration in this case weighs in favor of honoring *stare decisis* and exercising judicial restraint. If change is to be effected in this area, it should come from Congress.

## III.  CONCLUSION

For all of the foregoing reasons, the Petition should be denied in its entirety.

Respectfully submitted,

*/s/ John D. Luken*

John D. Luken
Joshua A. Lorentz
Eric K. Combs
Robert M. Zimmerman
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio  45202
(513) 977-8200
John.Luken@Dinsmore.com
Johsua.Lorentz@Dinsmore.com
Eric.Combs@Dinsmore.com
Robert.Zimmerman@Dinsmore.com

*Attorneys for Respondent*
*Kraft Foods Group Brands LLC*

# APPENDIX A

| Statute | Relevant Venue Language |
|---|---|
| 5 U.S.C. §8902a(i) | Attorney general may bring recover civil monetary penalties in any jurisdiction where defendant "resides." |
| 7 U.S.C. §210(f) | Stockyard owner that fails to comply with order of the Secretary of Agriculture may be sued in "the district in which he resides." |
| 7 U.S.C. §499g(b) | Same for any commission merchant, dealer, or broker that does not pay a reparation award ordered by the Secretary of Agriculture. |
| 7 U.S.C. §1642(e) | Suits under International Wheat Agreements Act may be brought in any district where defendant "is a resident." |
| 12 U.S.C. §1975 | Anti-tying suits under the Bank Holding Company Act may be brought in any district where "the defendant resides." |
| 15 U.S.C. §15a | United States may bring antitrust suit in "the district in which the defendant resides." |
| 15 U.S.C. §50 | Forfeiture action against individual that fails to file reports with Federal Trade Commission may be brought "in the district where such person resides." |
| 15 U.S.C. §53(a) & (b) | Federal Trade Commission may seek injunction against person or corporation engaged in false advertising or other violations of law in any district "where such person, partnership, or corporation resides." |
| 15 U.S.C. §68e(b) | Same with regard to violations of 15 U.S.C. §§ 68a, 68c, 68f, or 68g. |

1

| **Statute** | **Relevant Venue Language** |
|---|---|
| 15 U.S.C. §69g(b) | Same with regard to violations of 15 U.S.C. §§ 69a, 69d, or 69h(b). |
| 15 U.S.C. §70f(c) | Same with regard to violations of 15 U.S.C. §§ 70a, 70c, 70d, 70g, or 70h(b). |
| 15 U.S.C. §80a-26 | Securities and Exchange Commission may file suit seeking liquidation of unit investment trust "in any district wherein any trustee of such trust resides." |
| 15 U.S.C. §1222 | Automobile dealer may sue manufacturer "in the district in which said manufacturer resides." |
| 15 U.S.C. §1314(a) | Attorney General may sue person who fails to comply with civil investigative demand in any "district in which such person resides." |
| 15 U.S.C. §2606(c)(1)(A) | Government may file action against defendant that manufactures, processes, or distributes a chemical substance in any district where the defendant "resides." |
| 18 U.S.C. §1965 | RICO civil action may be filed in any district in which the defendant "resides." |
| 18 U.S.C. §2334 | Plaintiff injured by act of international terrorism may sue in any district where defendant "resides." |
| 26 U.S.C. §3232 | Attorney General may apply to court to compel any defendant "residing within the jurisdiction of the court" to comply with obligations under Railroad Retirement Tax Act. |

| Statute | Relevant Venue Language |
|---|---|
| 29 U.S.C. §160(e) & (j) | National Labor Relations Board may petition any court of appeals "wherein such person resides" for enforcement of an NLRB order and may seek injunction from any district court in the jurisdiction of defendant's residence. |
| 29 U.S.C. §1132(e)(2) | ERISA action may be filed in any jurisdiction "where a defendant resides." |
| 29 U.S.C. §1342(g) | Corporation may file suit to terminate ERISA plan in any jurisdiction "where the plan administrator resides." |
| 29 U.S.C. §1370(c) | Suits to enjoin or recover appropriate relief for termination of single-employer ERISA plans may be brought in any district where a "defendant resides." |
| 29 U.S.C. §1451(c) | Same with regard to multi-employer ERISA plans. |
| 42 U.S.C. §2000e-8(c) | EEOC or Attorney General may sue a defendant in any district in which it "resides" to force compliance with statutory requirements. |
| 42 U.S.C. §9613(b) | CERCLA action may be brought in any jurisdiction "in which the defendant resides." |
| 43 U.S.C. §1349(b)(1) | Citizen suit under Outer Continental Shelf Lands Act may be filed in a jurisdiction "in which any defendant resides." |
| 44 U.S.C. §516 | Suit against contractor that fails to furnish paper to the government may be brought in any jurisdiction where "the defaulting contractor resides." |
| 45 U.S.C. §56 | FELA action may be filed "in the district of the residence of the defendant." |

| **Statute** | **Relevant Venue Language** |
|---|---|
| 46 U.S.C. §58106 | A person injured by concerted discriminatory action by contractor receiving operating differential may sue in any district "in which the defendant resides." |
| 49 U.S.C. §30116(c) | Action for reimbursement under Motor Vehicle Safety Act may be filed in any jurisdiction "in which the manufacturer or distributor resides." |
| 49 U.S.C. §30163(c) | Attorney General may bring action to enjoin violations of Motor Vehicle Safety Act in any district where the defendant "resides." |
| 49 U.S.C. §32709(c) | Same for violations of Chapter 327 of Title 49. |
| 50 U.S.C. appx. §10(f) | Under the Trading with the Enemy Act, a patent holder could file suit against a licensee following the conclusion of a war in any district where the licensee "resides." |
| 50 U.S.C. appx. §2156(b) | Civil suits under Defense Production Act of 1950 could be filed in any jurisdiction where "defendant resides." |

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and accurate copy of this document was filed electronically with the Clerk of the Court using CM/ECF and was served via the CM/ECF system and via electronic mail on counsel of record on November 9, 2015.

/s/ John D. Luken
John D. Luken
*Attorney for Respondent*
*Kraft Foods Group Brands LLC*