**16-105**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———◆———

In re: TC HEARTLAND LLC,

*Petitioner.*

*On Petition for Writ of Mandamus to the United States District Court for the District of Delaware in No. 1:14-cv-00028-LPS, Chief Judge Leonard P. Stark.*

**BRIEF OF AMICI CURIAE ACUSHNET COMPANY, ADOBE SYSTEMS INC., ASUS COMPUTER INT'L, DEMANDWARE, INC., DROPBOX, INC., EBAY, INC., GOOGLE INC., HP INC., HTC AMERICA, INC., INTERACTIVECORP, INTUIT INC., L BRANDS, INC., LECORPIO LLC, LINKEDIN CORP., MACY'S, INC., NEWEGG INC., NORTH CAROLINA CHAMBER, NORTH CAROLINA TECHNOLOGY ASS'N, QVC, INC., SAP AMERICA, INC., SAS INSTITUTE INC., SYMMETRY LLC, VIZIO, INC. AND XILINX, INC. IN SUPPORT OF PETITIONER**

JOHN D. VANDENBERG
ROBERT T. CRUZEN
KLAUS H. HAMM
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204-2988
(503) 595-5300
john.vandenberg@klarquist.com
robert.cruzen@klarquist.com
klaus.hamm@klarquist.com

*Counsel for Amici Curiae*

NOVEMBER 6, 2015

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## No. 16-105

## **CERTIFICATE OF INTEREST**

**Counsel for *Amici Curiae* certifies the following:**

1. **The full name of every party or amicus represented by me is:**

   Acushnet Company, Adobe Systems Inc., ASUS Computer International, Demandware, Inc., Dropbox, Inc., eBay, Inc., Google Inc., HP Inc., HTC America, Inc., InterActiveCorp, Intuit, Inc., L Brands, Inc.*,* Lecorpio LLC, LinkedIn Corp., Macy's, Inc., Newegg Inc., North Carolina Chamber, North Carolina Technology Association, QVC, Inc., SAP America, Inc., SAS Institute Inc., Symmetry LLC, VIZIO, Inc. and Xilinx, Inc.

2. **The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

   N/A

3. **All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus represented by me are:**

   Adobe Systems Inc., Demandware, Inc., Dropbox, Inc., eBay, Inc., HP Inc., InterActiveCorp, Intuit, Inc., L Brands, Inc.*,* LinkedIn Corp., Macy's, Inc., Newegg Inc., North Carolina Chamber, North Carolina Technology Association, SAS Institute Inc., Symmetry LLC and Xilinx, Inc. have no parent corporations and no publicly held company owns 10% or more of their stock.

   Fila Korea Ltd. is traded on the South Korean Stock Exchange and, through a holding company structure, owns more than 10% of the stock of Acushnet Company.

ASUS Computer International is a wholly owned subsidiary of ASUSTeK Computer Inc.

Google Inc. is a wholly owned subsidiary of Alphabet Inc., a publicly traded company (NASDAQ: GOOG, GOOGL). No publicly held company owns 10% or more of Alphabet Inc.'s stock.

HTC America, Inc. is a wholly owned indirect subsidiary of HTC Corporation, which is a publicly traded company.

Lecorpio LLC is a privately held corporation and is a wholly owned subsidiary of Accretia Capital.

QVC, Inc. is a wholly owned subsidiary of Liberty Interactive Corporation.

SAP America, Inc. is a privately held corporation and is a wholly owned subsidiary of SAP SE.

VIZIO, Inc. has no parent corporation. AmTRAN Technology Co., Ltd., a publicly traded Taiwanese company, owns 10 percent or more of VIZIO, Inc.'s stock.

4. **The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:**

None appeared in the lower tribunal. John D. Vandenberg, Robert T. Cruzen, and Klaus H. Hamm of Klarquist Sparkman, LLP appear in this court for *amici*.

| | |
|---|---|
| NOVEMBER 6, 2015 | /s/John D. Vandenberg |
| | Signature of counsel |
| | John D. Vandenberg |
| | Printed name of counsel |

# **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST ................................................................................i

TABLE OF CONTENTS ..................................................................................... iii

TABLE OF AUTHORITIES ................................................................................ iv

INTEREST OF AMICI CURIAE ........................................................................... 1

INTRODUCTION ..................................................................................................2

THE PATENT VENUE STATUTE LIMITS A
DOMESTIC CORPORATION'S RESIDENCE TO
ITS STATE OF INCORPORATION, AND THE GENERAL
VENUE STATUTE DOES NOT OVERRIDE THAT LIMITATION........ 3

CORE PATENT POLICIES SUPPORT THE
STATUTORY INTERPRETATION URGED BY PETITIONER.............. 8

    A.    Easy Forum Shopping Undermines Strict
           Scrutiny Of Government-Granted Monopolies. ...................... 8

    B.    Easy Forum Shopping Undermines
           Patent Licensing And Innovation. ......................................... 10

CONCLUSION .................................................................................................... 13

CERTIFICATE OF SERVICE............................................................................. 14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*,
  406 U.S. 706 (1972) .................................................................................... 4, 5

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
  353 U.S. 222 (1957) ........................................................................................ 4

*Lear, Inc. v. Adkins*,
  395 U.S. 653 (1969) ........................................................................................ 8

*Philbrook v. Glodgett*,
  421 U.S. 707 (1975) ........................................................................................ 8

*Schnell v. Peter Eckrich & Sons, Inc.*,
  365 U.S. 260 (1961) ........................................................................................ 3

*Sears, Roebuck & Co. v. Stiffel Co.*,
  376 U.S. 225 (1964) ........................................................................................ 9

*Stonite Prods. Co. v. Melvin Lloyd Co.*,
  315 U.S. 561 (1942) ........................................................................................ 3

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
  917 F.2d 1574 (Fed. Cir. 1990) ............................................................... 4, 5, 6, 7

**Statutes And Rules**

28 U.S.C. § 1391 ............................................................................................... 6, 7

28 U.S.C. § 1400 .......................................................................................... passim

35 U.S.C § 101 ...................................................................................................... 9

35 U.S.C § 112 .................................................................................................... 11

35 U.S.C § 154 .................................................................................................... 11

35 U.S.C § 287 .................................................................................................... 11

Fed. R. App. P. 29 ................................................................................................. 1

**Other Authorities**

Brian C. Howard, *2015 First Half Patent Case Filing Trends*, Lex Machina (2015), https://lexmachina.com/2015-first-half-patent-case-filing-trends ............................................................................................... 2

Ranganath Sudarshan, *Nuisance-Value Patent Suits: An Economic Model and Proposal*, 25 Santa Clara Computer & High Tech. L.J. 159 (2009) .................................................................................................... 9

## **INTEREST OF AMICI CURIAE**

More than a century ago, Congress enacted a restrictive patent venue statute in response to abusive practices under the existing permissive venue provisions. Repeatedly since then, the U.S. Supreme Court has rejected efforts to relax venue restrictions in patent suits against domestic companies. In particular, it repeatedly has interpreted a domestic corporation's residence—for venue purposes in a patent suit—to be only its state of incorporation. *Amici curiae*[1] have a strong economic interest in the resurrection of this restrictive interpretation. They are (or represent or include) domestic companies that collectively have faced hundreds of patent infringement suits in a district where today 40% of patent suits are filed, and where most *amici* have no facilities and are not incorporated. Often, these suits lack merit but the cost of settling may be less than the cost of litigating until a ruling on the merits is issued. This burdens the defendant and can also allow

---

[1] Petitioner TC Heartland, LLC and respondent Kraft Food Group Brands LLC consent to the filing of this brief. Pursuant to Fed. R. App. P. 29(c), *amici* certify that no counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No person or entity, other than *amici*, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief.

patents to stand that should be invalidated. Applying the special venue statute's restriction on residence would be a step toward ending this serious problem in our nation's patent system.

**INTRODUCTION**

Forum shopping is a serious problem in U.S. patent litigation. When 40% of patent suits are filed in a single district far from our country's technology hubs, there can be no doubting that. *See* Brian C. Howard, *2015 First Half Patent Case Filing Trends*, Lex Machina (2015), *available at* https://lexmachina.com/2015-first-half-patent-case-filing-trends. And when this problem becomes so pronounced that it is mocked on HBO ("Last Week Tonight with John Oliver," Season 2, Episode 34, April 19, 2015), there can be no doubting that it needs to be solved immediately. The question here is whether the applicable venue statutes, properly interpreted, restrict this forum shopping in patent cases. They do. The special venue statute for patent cases, 28 U.S.C. § 1400(b), restricts a domestic corporation's residence to its state of incorporation and that restriction is not overridden by the current general venue statute, *id*. § 1391. And, even if these venue statutes

were not so clear, this interpretation would be compelled by core public policies of our patent system that are defeated by easy forum shopping.

### THE PATENT VENUE STATUTE LIMITS A DOMESTIC CORPORATION'S RESIDENCE TO ITS STATE OF INCORPORATION, AND THE GENERAL VENUE STATUTE DOES NOT OVERRIDE THAT LIMITATION.

The key to correctly answering the question of statutory interpretation before the Court is to start the analysis at the right place, namely the special patent venue statute, 28 U.S.C. § 1400(b).

In 1887, Congress enacted a restrictive venue provision to end the "abuses engendered by" the previously permissive venue provisions. *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 563 (1942); *accord Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 262 (1961). Ten years later, in 1897, Congress enacted as "a restrictive measure" a new special venue statute for patent cases to "define the exact jurisdiction of the federal courts in actions to enforce patent rights and thus eliminate the uncertainty produced by" conflicting decisions on the applicability of the general venue statute to such litigation. *Stonite*, 315 U.S. at 565, 566. "That purpose indicates that Congress did not intend the Act of 1897 to dovetail with the general provisions relating to the venue of civil suits, but rather that it alone should control venue in patent

3

infringement proceedings." *Id.* at 565-66. Thus, Congress "placed patent infringement cases in a class by themselves, outside the scope of general venue legislation." *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 713 (1972) (noting that this special patent venue statute applies to domestic persons and companies). The Supreme Court later extended this same interpretation to the re-codification of the special patent venue statute as § 1400(b), holding that it "is complete, independent and alone controlling in its sphere." *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228 (1957).

Given this special Congressional restriction on venue in patent cases, the Supreme Court's decisions have started with the meaning of that special statute, before turning to the impact, if any, of the general venue statute. Indeed, this Court has recognized that the Supreme Court starts with the special statute and only then turns to the general: "The Supreme Court in 1942 and again in 1957 took a restrictive view of venue in patent infringement cases, holding in effect that the meaning of the terms used in § 1400(b) was not to be altered or supplemented by other provisions found in the venue statutes." *VE*

4

*Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1577 (Fed. Cir. 1990).

The analysis here, therefore, must start by asking whether this special patent venue statute, standing alone, limits a domestic corporation's residence to its state of incorporation. The answer is yes: "where the defendant resides" in § 1400(b) "mean[s] the state of incorporation only" for a corporation. *Fourco*, 353 U.S. at 226; *accord Brunette*, 406 U.S. at 707 n. 2 ("the residence of a corporation for purposes of § 1400(b) is its place of incorporation."). Indeed, in *VE Holding*, this Court accepted without question this restrictive interpretation of "resides" in § 1400(b): "The Supreme Court in *Fourco* confirmed that for defendants that are corporations, 'resides' meant the state of incorporation only." 917 F.2d at 1578.[2]

---

[2] Only after accepting this restrictive meaning of "resides" in the patent venue statute, did the Court then turn to the second step of the analysis, *i.e.*, a determination of whether the general venue statute, *as worded at that time*, "redefines the meaning of the term 'resides' in" the special venue statute, and concluded that it did. *Id.* (That determination is not relevant to the current version of the general venue statute and *amici* do not address whether it was the correct interpretation of the former version of the statute.)

5

The analysis turns next to the current general venue statute. The question is whether it supersedes this restrictive definition of domestic-corporation residence in the special patent venue statute. The answer is that it does not. The current general venue statute expressly subordinates itself to the special venue provisions, stating that it does not alter what the special venue statutes provide: "Venue Generally (a) Applicability of Section.—*Except as otherwise provided by law*—(1) this section shall govern the venue of all civil actions brought in the district courts of the United States; …." 28 U.S.C. § 1391(a) (emphasis added). Plainly, the special patent venue statute's restriction of residence to only the state of incorporation "otherwise provide[s]" vis-à-vis § 1391's more permissive concept of residence. Therefore, as it did in 1897, 1942, 1957, 1961, and 1972, the special patent venue statute alone defines residence of a domestic corporation for venue in a patent suit.

*VE Holding* does not counter this interpretation of the current general venue statute, for three reasons. First, it pre-dates this express subordination provision in § 1391(a). Second, it rested on language since removed from the statute. *VE Holding*, 917 F.2d at 1578. Third, *VE Holding* recognized that the interplay of the venue statutes "depends

6

very much on the precise language of the relevant statutes along with, in appropriate cases, other evidence of Congressional intent." *Id.* at 1577. Here, the special patent venue statute (as repeatedly interpreted by the Supreme Court) restricts a corporation's residence to its state of incorporation and the *current* general venue statute by its own terms does *not* lift that restriction.

The trial court reached the wrong result because it started its analysis at the wrong place. It started with the general venue statute, § 1391, and determined that its broad definition of residence overrode the restrictive meaning of residence in the special patent venue statute, § 1400(b). The court then asked whether the special venue statute—so supplemented—conflicted with the general venue statute. It was a foregone conclusion that there was no conflict because the court already had sought to harmonize the provisions by reading the general provision's definition of residence into the specific provision.

In sum, properly interpreted, the venue statutes limit forum shopping in patent cases by restricting a domestic corporation's residence to its state of incorporation for patent venue purposes.

## CORE PATENT POLICIES SUPPORT THE STATUTORY INTERPRETATION URGED BY PETITIONER.

In addition, Petitioner's interpretation of the venue statutes is compelled by core public policies embedded in the Patent Act. *Cf. Philbrook v. Glodgett*, 421 U.S. 707, 713 (1975) (in interpreting a statute, a court must "'look to the provisions of the whole law, and to its object and policy.'") (citation omitted). Two policies in particular are undermined by easy forum shopping: (1) the policy favoring strict post-issuance scrutiny of government-granted patent monopolies, and (2) the policy favoring patent licensing and follow-on innovations.

### A.  Easy Forum Shopping Undermines Strict Scrutiny Of Government-Granted Monopolies.

The Supreme Court long has viewed post-issuance scrutiny of patent monopolies as essential to our patent system. For example, "the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain," led the Court to permit patent licensees to challenge validity because otherwise, "[i]f they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification." *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969). More generally, "[o]nce

8

the patent issues, it is strictly construed, it cannot be used to secure any monopoly beyond that contained in the patent, the patentee's control over the product when it leaves his hands is sharply limited, and the patent monopoly may not be used in disregard of the antitrust laws." *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 230 (1964) (citations omitted).

Easy forum shopping defeats this policy. It often allows patent owners to choose the forum least likely in our country to allow a speedy or low-cost determination of invalidity or non-infringement. For example, patent owners with questionable patents and/or infringement assertions naturally will flock to the district least likely to promptly stay a patent suit pending Patent Office review proceedings, least likely to grant an early motion to dismiss under § 101 of the Patent Act, and least likely to allow an early summary judgment motion of non-infringement or invalidity. This does not merely disadvantage individual defendants. It undermines the public policy favoring strict scrutiny of issued patents.

Simple economics demonstrates that easy forum shopping especially shields the weakest patents from the necessary scrutiny.

9

Patent owners with questionable patents or infringement allegations often seek and extract settlements under the cost of defense. *See*, *e.g.*, Ranganath Sudarshan, *Nuisance-Value Patent Suits: An Economic Model and Proposal*, 25 Santa Clara Computer & High Tech. L.J. 159 (2009). This values the patent asset not on its contribution to the art but rather on the value of avoiding the cost of proving that the asset is invalid or inapplicable. When the value of the asset is therefore directly derived from the amount of defense costs that will be incurred prior to a ruling on the merits, such patent owners rationally choose the forum that imposes the greatest costs to obtain a merits ruling. Consequently, patents that should promptly be invalidated or declared inapplicable to modern technology instead, by virtue of cost-of-defense settlements, survive to tax or cloud what ought to be in the public domain.

This harm forum shopping causes to a core public policy of our patent system supports the statutory interpretation urged by Petitioner and *amici*, which would restrict such forum shopping.

### B. Easy Forum Shopping Undermines Patent Licensing And Innovation.

Easy forum shopping also encourages a sue-first regime that promotes litigation over negotiation. This, of course, would be

10

unwelcome in any area of law, but it is particularly antithetical to our patent system. Our patent system's promotion of innovation depends not only on motivating first innovators by issuing them patents but also on motivating subsequent innovators to invent around those issued patents. These dual engines of innovation fostered by our patent system depend on a well-functioning system of patent notices and licensing.

More specifically, issuing patents on true inventions can promote innovation partly by encouraging others to either further invent to avoid those patents (perhaps further advancing the arts) or to instead take a license to use the patented technology (rewarding the first innovator and spreading the benefits of the invention). Multiple Patent Act provisions further this policy. Section 287 encourages patent owners to give actual notice of patents and infringement allegations. Section 154(d) encourages patent applicants to also give potential infringers actual notice of published patent applications. Further, § 112 mandates particular and distinct patent claims, in part to provide clear notice to follow-on innovators who want to innovate around a patent without risking suit.

Properly construed, the special patent venue statute's restriction on forum shopping also furthers this core policy of the patent system. When patent owners are free to choose virtually any forum of their liking, they become loath to provide pre-suit notice of infringement for fear that they might forfeit the forum of their choice, should the alleged infringer respond with a declaratory judgment action in a different forum. But the calculus is different under the restrictive venue dictate of § 1400(b) limiting patent suits to districts where the defendant domestic corporation is incorporated or has an established place of business and has allegedly infringed. That venue restriction reduces the strategic forum-shopping disincentive to do what the patent system encourages—provide notice of the patent and alleged infringement and attempt to resolve the matter without litigation.

In sum, having 40% of patent suits in a single district not only burdens individual defendants, it also defeats core public policies of our patent system.

## CONCLUSION

The patent venue statute restricts a domestic corporation's residence to its state of incorporation and that restriction advances core policies of our patent system.

        Respectfully submitted.

        /s/John D. Vandenberg
        John D. Vandenberg
        Robert T. Cruzen
        Klaus H. Hamm
        KLARQUIST SPARKMAN, LLP
        One World Trade Center
        121 S.W. Salmon Street, Suite 1600
        Portland, Oregon 97204-2988
        (503) 595-5300
        john.vandenberg@klarquist.com
        robert.cruzen@klarquist.com
        klaus.hamm@klarquist.com

        *Counsel for Amici Curiae*

        November 6, 2015

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## No. 16-105

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to the law and being over the age of 18, upon my oath depose and say:

Counsel Press was retained by KLARQUIST SPARKMAN, LLP Attorneys for Amici Curiae to print this document. I am an employee of Counsel Press.

On November 6, 2015, counsel authorized me to electronically file the foregoing **Brief of Amici Curiae Acushnet Company, Adobe Systems Inc., ASUS Computer Int'l, Demandware, Inc., Dropbox, Inc., eBay, Inc., Google Inc., HP Inc., HTC America, Inc., InterActiveCorp, Intuit Inc., L Brands, Inc., Lecorpio LLC, Linkedin Corp., Macy's, Inc., Newegg Inc., North Carolina Chamber, North Carolina Technology Ass'n, QVC, Inc., SAP America, Inc., SAS Institute Inc., Symmetry LLC, VIZIO, Inc. and Xilinx, Inc. in Support of Petitioner** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

| | |
|---|---|
| James W. Dabney | John David Luken |
| Hughes Hubbard & Reed LLP | Dinsmore & Shohl LLP |
| One Battery Park Plaza | 1900 First Financial Center |
| New York, NY 10004 | 255 East 5th Street |
| 212-837-6000 | Cincinnati, OH 45202 |
| james.dabney@hugheshubbard.com | 513-977-8323 |
| Counsel for Petitioner | john.luken@dinslaw.com |
| | Counsel for Respondent |

NOVEMBER 6, 2015                           /s/ Robyn Cocho
                                                              Robyn Cocho
                                                              Counsel Press